**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| KATIANA SOENEN, | : | |
| CARTER WOODRUFF, | : | Civil Action No.: |
| TAJA HIRATA-EPSTEIN, | : | |
| CHLOE BURNS, | : | |
| and on behalf of all others similarly situated, | : | |
| | : | Complaint-Class Action |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | Jury Trial Demanded |
| BROWN UNIVERSITY, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs, Katiana Soenen ("Katiana"), Carter Woodruff ("Carter"), Taja Hirata-Epstein ("Taja"), and Chloe Burns ("Chloe") (collectively, "Plaintiffs"), on behalf of themselves and all other current and former women students at Brown University (also referred to herein as "Brown" or "the University"), bring this Class Action Complaint (the "Complaint") against Defendant Brown University based upon personal knowledge of Plaintiffs and based upon the investigation of counsel regarding all other matters, for the University's complete failure to comply with the law in connection with the way it grievously mishandled complaints of sexual misconduct that were made by students to the University and its staff. In support of the Complaint, Plaintiffs state as follows:

## I.    INTRODUCTION

1.    The sexual misconduct response program at Brown has been in a state of complete neglect and dysfunction at all dates relevant to this Complaint. As set forth in more detail herein, despite its known duty to protect its students from harm, Brown not only failed to carry out this

duty but actively prevented the reporting of such harm. Had Brown simply done what it was required by law to do to protect its students, countless sexual assaults, including those perpetrated on Plaintiffs and the Class, could have been avoided. This complete breach of trust by an institution to the students within its care is inexcusable.

2.      Indeed, despite its knowledge that sexual assault on its campus is endemic and that women students are routinely injured, Brown failed and continues to fail to take effective preventive measures and has allowed this dangerous situation to persist and cause harm to women students, including Plaintiffs and the Class, creating a campus culture that ignores and even tacitly allows trauma to be inflicted upon women.

3.      Plaintiffs, individually and on behalf of the putative Class, are current and former Brown University students who attended the Providence, Rhode Island, campus during the time period of 2018 to present and who are survivors of sex/gender-based discrimination, sexual assault, including rape, sexual harassment, and/or stalking while attending Brown.

4.      Pursuant to Title IX of the Education Amendments of 1972 ("Title IX"), no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

5.      Brown has had a systemic problem with properly handling sexual harassment and sexual abuse allegations, contrary to its federal mandates under Title IX. Brown's failures discussed herein constitute discrimination based on sex/gender in violation of Title IX.

6.      Brown students have attempted, unsuccessfully, to push Brown for reform from within.

7.      On or about June 27, 2020, the Instagram account Voices of Brown ("VOB") was founded. VOB allowed sexual assault survivors at Brown to anonymously discuss instances of sexual assault on campus and their experiences in reporting those assaults to Brown. VOB quickly amassed strong student support and a large online presence. The account was followed by over half of the student population at Brown. For the first time, Brown students were made aware of Brown's systemic failures on campus in preventing sexual violence and responding to Title IX complaints. Brown did not respond to or address the existence of the VOB account.

8.      In February 2021, in the wake of over a hundred devastating survivor reports to VOB, and silence from Brown, the Instagram account End Sexual Violence at Brown ("ESV") was created. ESV was and is a coalition of Brown students and student-run organizations created for and dedicated to facilitating community-based anti-sexual violence mobilization.

9.      In April 2021, the ESV account posted an open letter on Instagram denouncing the Brown Administration and recounting a decades-long history of institutional survivor-silencing and suppression of student activism. The letter went viral, garnering attention both online and by the media.

10.     Galvanized by the open letter, ESV organized a large-scale poster protest. Students at Brown, mobilized by ESV, taped up over 2,000 posters all over Brown's campus. The posters read "End Sexual Violence @ Brown," "End the Silence, End the Violence," and some provided a list of resources for survivors on campus.

11.     ESV also organized an in-person, outdoor, COVID-safe protest on April 7, 2021. Students marched to the Brown president's house, gave speeches, and provided itemized demands to the University for reform. Local newspapers covered the protests.

12.    On April 15, 2021, ESV published demands for Brown's Administration through an organized email campaign; hundreds of Brown students emailed demands for reform to Brown.

13.    Brown administrators never responded to the actions of ESV directly. In fact, Brown only begrudgingly agreed to meet with ESV leaders after numerous email exchanges with repeated requests. The meeting between ESV members and administrators resulted in no material changes to Brown's policies or conduct.

14.    Despite this history, Brown has failed and continues to fail at taking steps to prevent sexual misconduct from occurring at its institution. In fact, Brown set up a system that dissuades and actively thwarts reporting of sexual assault and misconduct on campus despite its knowledge of a pervasive and ongoing problem.

15.    Indeed, reports to the University's Title IX Office were useless because Brown employees, who were mandatory reporters under Title IX, discouraged or even overtly prevented the proper reporting of sexual assault and abuse allegations.

16.    Those complaints that were able to be filed with the Title IX Office were ignored and inadequately investigated or addressed, effectively ratifying the abusive acts committed against Plaintiffs herein.

17.    Further, Brown routinely engaged in retaliatory conduct against students who publicly discussed their experiences, publicly raised complaints about Brown, and/or engaged in publicly-organized protests against Brown's failures in responding to and investigating claims of sexual misconduct, including sexual assault and other forms of sex/gender-based discrimination as set forth herein.

18.    Brown's investigation of and response to complaints of sexual assault, misconduct, and harassment is insufficient and does not comply with federal law, including Title IX response

requirements as outlined in guidance issued by the U.S. Department of Education Office for Civil Rights ("OCR"). It further fails to comply with Rhode Island state law, including the Rhode Island Civil Rights Act (R.I.G.L. § 42-112-1 *et seq.*). Simply put, Brown's abysmal response to complaints by Plaintiffs and other similarly-situated students is sex/gender-based discrimination.

19.     As a result of this pattern and practice of misconduct by the University, Plaintiffs have suffered emotional distress and other injuries from their assaults, predictably resulting in a decline in academic performance.

20.     In multiple instances, Plaintiffs were forced to leave Brown to the detriment of their educational and career opportunities because of the severity of the harm caused to them by Brown.

21.     Brown routinely failed to follow its own policies and procedures in responding to and investigating claims of sexual misconduct, including sexual assault and other forms of sex/gender-based discrimination. Brown did not provide appropriate training to its staff and faculty on how to handle and address complaints subject to Title IX protection.

22.     Moreover, Brown's Title IX policies are contradictory, confusing, and difficult to understand both for students and employees. And even more shocking, multiple requests for Brown to reform its policies and response to complaints subject to those policies fell on deaf ears.

23.     Brown's failure to appropriately respond to and investigate Plaintiffs' claims, as well as the sex/gender discrimination and other harms perpetrated by Brown against Plaintiffs, caused Plaintiffs severe harm, violated the law, and denied Plaintiffs the ability to participate fully in their education as Brown students.

## JURISDICTION AND VENUE

24.     This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*

25.     This Court has subject matter jurisdiction over the class claims in this case pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the Federal Courts over any class action in which any member of the Plaintiff Class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.

26.     Plaintiffs and the putative Class allege that the total claims of the individual members of the proposed Plaintiff Class are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2) and (5). As set forth below, Plaintiffs are domiciled in several states and are citizens of Texas, the District of Colombia, Colorado, and California. Defendant is a citizen of Rhode Island. Therefore, minimal diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

27.     This Court also has subject matter jurisdiction over this case based on 28 U.S.C. § 1331, which grants the district court jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom, or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil

action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

28.      Plaintiffs' claims are cognizable under the United States Constitution, 42 U.S.C. §§ 1681 *et seq*., and under Title IX.

29.      This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

30.      The events giving rise to this lawsuit occurred in the city of Providence, Rhode Island, which sits in this District. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claims occurred.

31.      Brown is subject to the Court's personal jurisdiction with respect to this action.

## THE PARTIES

32.      Katiana is a person of the age of majority and a current student at Brown, and at all times pertinent to this suit resided either on campus at Brown, or in private housing in the city of Providence, Rhode Island. Currently, Katiana is a citizen of the State of Texas.

33.      Carter is a person of the age of majority and a former student at Brown, and at all times pertinent to this suit resided either on campus at Brown, or in private housing in the city of Providence, Rhode Island. Currently, Carter is a citizen of the State of California.

34.      Taja is a person of the age of majority and a former student at Brown, and at all times pertinent to this suit resided either on campus at Brown, or in private housing in the city of Providence, Rhode Island. Currently, Taja is a citizen of the District of Columbia.

35.      Chloe is a person of the age of majority and a former student at Brown, and at all times pertinent to this suit resided either on campus at Brown, or in private housing in the city of Providence, Rhode Island. Currently, Chloe is a citizen of the State of Colorado.

36.     Plaintiffs and the other members of the Class are natural persons and, at all times relevant to this complaint, were students at Brown University.

37.     Defendant Brown was at all relevant times and continues to be an educational institution in Providence, Rhode Island, organized and existing under the laws of the State of Rhode Island, with an address at 1 Prospect Street, Providence, RI 02912.

## BACKGROUND FACTS RELEVANT TO ALL PLAINTIFFS AND ALL OTHER SIMILARLY-SITUATED STUDENTS

### *Brown's Inadequate and Unlawful Title IX Oversight and Response*

38.     Brown has two policies which guide the University's response to potential Title IX violations: (1) the Title IX Policy,[1] last approved February 23, 2021; and (2) the Sexual and Gender-based Misconduct Policy.[2]

39.     The Title IX Policy includes the following statement of purpose:

> This policy prohibits Sexual Harassment, Gender-Based Harassment, Sexual Assault, Dating Violence, Domestic Violence, and Stalking, in addition to Retaliation against an individual for making a report of conduct prohibited under this policy or for participating in an investigation of an alleged violation of this policy. It also defines Prohibited Intimate Relationships between individuals where one individual has power or authority over another which could create a hostile environment.

> This policy is in accordance with Title IX of the Education Amendments of 1972; relevant provisions of the Violence Against Women Reauthorization Act of 2013; Title VII of the Civil Rights Act of 1964; the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act; their implementing regulations; and other applicable federal and Rhode Island state laws and regulations.

---

[1] https://www.brown.edu/about/administration/title-ix/Sexual%20and%20Gender-Based%20Harassment%2C%20Sexual%20Assault%2C%20Interpersonal%20Violence%2C%20and%20Stalking%20Policy (last visited August 5, 2021).
[2] https://www.brown.edu/about/administration/title-ix/policies/sexual-and-gender-based-misconduct-policy (last visited August 5, 2021).

40.     The Title IX Policy further reads: "Taking meaningful action when conduct prohibited by this policy occurs is a critical component to Brown's commitment to a campus that is free from discrimination and harassment. Brown asks faculty and staff in varying leadership roles who oversee the welfare of faculty, staff, students, and University programs to assist us in these efforts by reporting all disclosures or knowledge of Prohibited Conduct to the Title IX Program Officer. Such reports amplify the University's ability to know what is occurring within its programs and activities and to respond accordingly. The Title IX Program Officer will conduct an initial assessment of these reports and will do so in a manner consistent with the privacy choices of the Complainant or reporting party."

41.     The Sexual and Gender-based Misconduct Policy includes the following statement of purpose:

> This policy prohibits Sexual Harassment, Gender-Based Harassment, Sexual Assault, Dating Violence, Domestic Violence, and Stalking, in addition to Sexual Exploitation and Provision of Alcohol and/or Other Drugs for Purposes of Prohibited Conduct. This policy also prohibits Retaliation against an individual for making a report of conduct prohibited under this policy or for participating in an investigation of an alleged violation of this policy.

> This policy is in accordance with relevant provisions of the Violence Against Women Reauthorization Act of 2013; Title VII of the Civil Rights Act of 1964; the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act; their implementing regulations; and other applicable federal and Rhode Island state laws and regulations.

42.     The Sexual and Gender-based Misconduct Policy addresses prohibited conduct, including sexual assault, that occurs off-campus. It includes a complete procedure that is to be used to respond to formal complaints.

43.     Pursuant to Section 3.1.4 of Brown's Sexual and Gender-based Misconduct Policy regarding Mandatory Reports, "Brown asks faculty and staff in varying leadership roles who

oversee the welfare of faculty, staff, students, and University programs to assist [] by reporting all disclosures or knowledge of Prohibited Conduct to the Title IX Program Officer."

44.    Pursuant to Section 3.1.5 of Brown's Sexual and Gender-based Misconduct Policy, "[t]he University will accept a report of Prohibited Conduct at any time" and "[t]here is no time limit on submitting a Formal Complaint." Additionally, "the University will provide reasonably available and appropriate support measures, assist the Complainant in identifying external reporting options, and may take appropriate action to address the Prohibited Conduct," even if the "the Complainant and/or Respondent is no longer affiliated with Brown."

45.    Pursuant to Section 6.0 of Brown's Sexual and Gender-based Misconduct Policy, the "[f]ailure to comply with this and related policies is subject to disciplinary action, up to and including suspension without pay, or termination of employment or association with the University, in accordance with applicable (e.g., staff, faculty, student) disciplinary procedures."

46.    Furthermore, Section 4.0 of Brown's Sexual and Gender-based Misconduct Policy defines retaliation as "any action, statement, or behavior meant as reprisal or retribution against an individual in response to the individual's good-faith report or participation in a proceeding related to this policy. Any retaliatory action taken directly or indirectly against a person who has made a report, filed a complaint, or participated in an investigation is prohibited."

47.    The Corporation for Brown University, the University's governing body, also has a policy on Equal Opportunity, Nondiscrimination and Affirmative Action ("Equal Opportunity Policy"),[3] last revised on May 1, 2020, which reads: "Brown University provides equal opportunity and prohibits discrimination, harassment and retaliation based upon a person's race, color, religion, sex, age, national or ethnic origin, disability, veteran status, sexual orientation, gender identity,

---

[3] https://www.brown.edu/about/administration/corporation/corporation-policy-statement-equal-opportunity-nondiscrimination-and-affirmative-action (last visited August 5, 2021).

gender expression, or any other characteristic protected under applicable law, in the administration of its policies, programs, and activities."

48.     Brown repeatedly engaged in discriminatory, retaliatory, and other unlawful actions in its interactions with Plaintiffs in response to Plaintiffs' reports of sexual assault and other sexual misconduct, in violation of Title IX, Brown's own Title IX policy, Brown's Sexual and Gender-based Misconduct Policy, and the Corporation for Brown University's Equal Opportunity Policy.

49.     Upon information and belief, the training Brown provided for students and employees on its sexual misconduct and anti-discrimination policies, definitions, and investigation and reporting procedures falls far short of the OCR's standards in terms of educating community members at higher education institutions about their rights and obligations with respect to sexual misconduct and sexual discrimination on campus.

50.     As part of its Common Data Set initiative, Brown reported 10,257 undergraduate and postgraduate students in Fall 2018; 10,333 undergraduate and postgraduate students in Fall 2019; and 9,948 undergraduate and postgraduate students in Fall 2020.[4]

51.     Upon information and belief, institutions of the same size and scale as Brown generally provide much more comprehensive training to students and employees to inform them of their rights and obligations under the institution's Title IX Policy than Brown did.

52.     Upon information and belief, at all times relevant to this Complaint, the Title IX Office at Brown did not have a dedicated Title IX investigator to ensure that an institution

---

[4] As set forth on Brown's website, the Common Data Set is a standardized set of questions most often asked by parents, students, and other members of the higher education community. https://oir.brown.edu/institutional-data/common-data-set (last visited August 5, 2021).

consisting of approximately 10,000 students and numerous other employees remained free of sex/gender-based discrimination.

53.     Upon information and belief, at all times relevant to this Complaint, the Title IX Office at Brown was relegated to and forced to rely on only two (2) investigators supplied by the Office of Institutional Equity and Diversity (OIED), consisting of an Institutional Equity Officer and an Institutional Equity Investigator, both of whom have responsibilities within OIED unrelated to Title IX.

54.     Brown's Title IX Office was woefully inadequate and insufficiently staffed to meet the needs of its campus and fell well outside the scope of standards required for an institution of Brown's size.

55.     On September 16, 2019, the research firm Westat published a report describing the results of a 2019 Campus Climate Survey on Sexual Assault and Misconduct ("Campus Climate Survey") administered at Brown.[5]

56.     According to the Campus Climate Survey, nearly 3,100 undergraduate, graduate, and medical students participated in the Westat survey—a 31.5% response. The results of this survey were shocking, and showed, at a minimum:

- **A Frequency and Nature of Victimization by Physical Force or Incapacitation**:
  - 24.5% of undergraduate women reported experiencing nonconsensual sexual contact since arriving at Brown.

---

[5] https://www.brown.edu/web/documents/climatesurvey-2019/Brown_University_Full_Westat_Report_2019.pdf (last visited August 5, 2021).

- **A Prevalence of Sexual Harassment:**
  - 48.2% of students reported experiencing at least one type of offensive or inappropriate behavior of a sexual nature.

- **A Prevalence of Intimate Partner Violence:**
  - 9.5% of students reported experiencing at least one type of controlling, threatening or physical harm from an intimate partner.

- **A Prevalence of Stalking:**
  - 6.3% of students reported experiencing behavior associated with stalking.

- **Characteristics of offenders:**
  - 78.4% of offenders were current Brown students.

57.    The detailed data within the Campus Climate Survey demonstrates that at all times relevant to this Complaint, campus sexual and gender-based harassment and violence was and continues to be a serious issue at Brown. Additionally, the data revealed that:

- 22.1% of students reported that they believe that **sexual misconduct is very or extremely problematic on Brown's campus**;

- 6.9% of students reported that they believe it is very or extremely likely that **they will experience sexual assault or misconduct while enrolled at Brown**;

- 8.5% students reported that they believe that it is **unlikely or very unlikely that campus officials would take the report seriously**; and

- 14.5% students reported that they believe it would be **unlikely or very unlikely that the investigation would be fair**.

58.    Upon information and belief, to curb reporting of the increasing number of incidents at Brown, Title IX complaints are purposefully buried or diverted so as to ensure that

13

those complaints are not held against the University, which means that complaints were never properly investigated or addressed and offending students were not negatively impacted, all of which benefits both Brown financially and reputationally and causes further harm to Plaintiffs and other similarly-situated students.

59.     The Title IX Office publishes an Annual Outcome Report on complaints of sexual misconduct brought to the attention of Brown officials and the outcomes of those complaints. According to those Annual Outcome Reports:

- 59 incidents were reported to the Title IX Office from July 2016-June 2017, but only 12 formal complaints were filed and only 4 findings of responsibility at the time of publication;[6]

- 92 incidents were reported to the Title IX Office from July 2017-June 2018, but only 9 formal complaints were filed and only 3 findings of responsibility;[7]

- 99 incidents were reported to the Title IX Office from July 2018-June 2019, but only 11 formal complaints were filed and only 4 findings of responsibility;[8] and

- 103 incidents were reported to the Title IX Office from July 2019-June 2020 but only 9 formal complaints were filed and only 5 findings of responsibility.[9]

---

[6] https://www.brown.edu/about/administration/title-ix/sites/brown.edu.about.administration.title-ix/files/uploads/AnnualOutcomeReportsOctober2017_final%20%281%29.pdf (last visited August 5, 2021).
[7] https://www.brown.edu/about/administration/title-ix/sites/brown.edu.about.administration.title-ix/files/uploads/106390_OIED_Title%20IX%20Annual%20Outcomes%20Report_0419%20FNL_0.pdf (last visited August 5, 2021).
[8] https://www.brown.edu/about/administration/title-ix/sites/brown.edu.about.administration.title-ix/files/uploads/Title%20IX%20Annual%20Outcomes%20Report_2018-2019.pdf (last visited August 5, 2021).
[9] https://www.brown.edu/about/administration/title-ix/sites/brown.edu.about.administration.title-ix/files/uploads/TIXAnnualReport20192020_FNL.pdf (last visited August 5, 2021).

60.     Brown's insufficient response to Plaintiffs' reports of Title IX violations subjected Plaintiffs and other similarly situated students to additional harassment and created a sexually hostile environment on campus.

61.     Plaintiffs and all other similarly situated students suffered harm as a direct and indirect result of Brown's actions and inactions, as detailed herein.

62.     Not only are Brown employees not properly trained in responding to and investigating Title IX reports, but students are actively discouraged from reporting them and are retaliated against if they attempt to report such incidents.

## NAMED PLAINTIFFS' FACTUAL ALLEGATIONS

### *Katiana*

63.     Katiana began her education at Brown in 2020 and is majoring in Public Health and International and Public Affairs with a focus on Governance and Policy, specifically Health Policy.

64.     In May 2021, at an off campus party hosted by student-athletes of Brown's rugby team, Katiana was sexually assaulted by a male student.

65.     During the last week of May 2021, Katiana met with personnel from the Title IX Office, including Jeana Horton, Brown's current Interim Title IX Program Officer, to report the assault. During the meeting, Katiana was discouraged from making a formal report because the incident happened off campus and Ms. Horton claimed the assailant would likely not be found responsible. Instead, Katiana was encouraged to either make an informal report or report the assault anonymously through Brown's Sexual Violence & Gender-based Harassment Incident Reporting Form to establish a trend of misconduct involving the assailant.

66.     There was no equitable investigation. Rather, Katiana wanted to make a formal complaint but was coerced into the informal process. Upon making an informal complaint, the

Title IX Office reached out to her assailant and accepted his version of the events, even forwarding to Katiana an email apology the assailant had prepared. The email forwarding the apology was characterized as "affirming and appropriate" by Rene Davis, Brown's Title IX Officer, despite the assailant stating in the email that he had "enjoyed talking with [Katiana]," insinuating that he had enjoyed assaulting her. No further action was taken.

67.    On June 12, 2021, Katiana was raped in an off-campus, unsanctioned frat house affiliated with the Men's Water Polo Team at Brown. Before Katiana's rape, the frat house had previously been kicked off campus.

68.    Katiana did not know her assailant, but she remembered enough details to look at Brown's website for the Men's Water Polo Team and narrow it down to one student-athlete.

69.    Given that Katiana's prior report to the Title IX Office resulted in no action being taken, Katiana was reluctant to report the June 2021 rape until a SHARE advocate, a University employee, suggested she should.

70.    In July 2021, Katiana had several meetings with the Title IX Office, including Jeana Horton, where Katiana reported the June 2021 rape. During one of those meetings, Ms. Horton made statements to Katiana implying that the Title IX Office was aware of prior allegations of sexual misconduct at the off-campus, unsanctioned frat house.

71.    In a subsequent meeting with the Title IX Office, also attended by the SHARE advocate, Katiana advised the Title IX Office that she had been able to narrow down her assailant to one student-athlete. Katiana asked the Title IX Office how certain she had to be about the identity of her assailant.

72.    The Title IX Office declined to answer Katiana's question, failed to conduct any investigation into the rape, and failed to further assist her in any way.

73.    Appalled by the response from the Title IX Office, the SHARE advocate recommended that Katiana seek legal counsel outside of the University's Title IX Office.

### *Carter*

74.    Carter enrolled at Brown in 2016 as a Freshman, with hopes of obtaining a Bachelor's degree in International Relations. Carter is currently on a medical leave of absence from Brown due to emotional trauma resulting from multiple instances of sexual abuse, assault, harassment, and other related trauma while a student at Brown.

75.    One of those instances occurred the night of Friday, December 6, 2019, at an off-campus party. Carter was approached by a male assailant, also a student at Brown, who was secretly recording her.

76.    Carter left the party and went home and, as she arrived home, she found the male assailant waiting for her outside her residence. He convinced her to come with him to his apartment.

77.    At the assailant's house, the assailant kissed and groped Carter without her consent. Carter was able escape the assailant's advances.

78.    Using his phone, the assailant eventually called Carter an Uber home. The assailant then fell asleep as Carter waited for the Uber. When Carter reached for the assailant's phone to check the status of the Uber, she discovered that there were recordings with her first name titled "Carter 1", "Carter 2," and that one recording was ongoing and had not yet been titled.

79.    Carter saw that there were recordings of several other people labeled in similar ways. Carter confronted the assailant about the recordings before taking the Uber home.

80.     The following day, Carter learned from two friends they had also been non-consensually sexually assaulted by the same assailant at the party.

81.     Thereafter, Carter reported her encounter and the recordings to the Office of Student Conduct at Brown. Personnel at that Office, who were mandatory reporters under Title IX, knew exactly who she was talking about, even though she only mentioned the assailant by his first name.

82.     Carter recalls that nothing came of her report and her assailant later graduated from Brown with no issue or repercussions.

83.     On January 2, 2020, Carter was placed on medical leave by Brown. Carter has struggled mentally and emotionally due to her experience and due to frustrations with Brown's failure to investigate and/or report her credible claims of assault.

**_Taja_**

84.     Taja graduated from Brown in 2020 with a degree in Political Science. From 2017 to 2018, she was in a sexually abusive relationship with a male Brown student.

85.     In the Fall semester of 2018, Taja resided at an on-campus dorm house that was affiliated with her co-ed fraternity.

86.     Taja's abuser was also a member of that fraternity and living in the same building.

87.     In September 2018, Taja reported the abusive relationship to her fraternity.

88.     Taja's abuser arranged with Brown's Office of Residential Life to leave the dorm and live nearby off-campus.

89.     Despite Taja's abuser's removal from the dorm, he continued to harass Taja through his friends who were still in the fraternity and living in the dorm. His friends would routinely harass Taja against raising any Title IX complaints against her abuser.

90.     In October 2018, Taja told a Dean at Brown about the sexually abusive relationship. The Dean advised Taja that the Dean was a mandatory reporter pursuant to Brown's Title IX Policy. The Dean reported the sexually abusive relationship to the Title IX Office.

91.     The Dean then mediated contact between Taja and the Office of Residential Life in an effort to get Taja housing accommodations and permission to move off-campus. Taja explained that she was seeking permission to move off-campus because of the continued harassment from her abuser through his friends and her abuser's on-going presence within the fraternity's dorms. The Office of Residential Life denied her request, without explanation.

92.     Ten days after the Dean reported her situation to Title IX, Taja inquired with the Dean about whether she should have heard from the Title IX Office. The Dean reissued the request to the Title IX Office to reach out to Taja about the reported conduct. It was only after this follow-up that the Title IX Office contacted Taja.

93.     After re-involving the Dean, the Title IX Office responded to Taja with a form letter. Taja returned contact and arranged for a meeting with the Title IX Office in early December 2018.

94.     Taja, along with her SHARE advocate, attended the meeting. Though Taja inquired into the availability of the formal complaint process, she was heavily pressured by the Title IX Office into an informal process.

95.     Taja was told by the Title IX Office that it was rarity for a formal complaint to result in a perpetrator on campus being found responsible. They explained that half of all formal complaints resulted in decisions in favor of the perpetrator. They also told Taja that the process would likely be difficult and traumatizing.

96.     In January 2019, after being pressured into the informal process, the Title IX Office mediated a no-contact agreement between Taja and the sexually abusive partner.

97.     During the informal Title IX process, Taja requested that the Title IX Office ask her abusive partner to stay out of her dorm. The Title IX Office advised that they would speak to him.

98.     Taja thereafter renewed her request to reside off-campus in order to further limit contact with her abusive partner and his friends. The Title IX Office denied the request again, with no explanation.

99.     Taja then moved out of her fraternity dorm to a different on-campus dormitory.

100.    Taja continued to worry, however, because of the proximity of her residence hall to her abusive partner and his friends, who had harassed her. The abuser's friends continued to harass Taja on campus when they saw her.

101.    Having heard nothing after her first request, in the Spring of 2019, after the no-contact agreement was entered, Taja met with the Title IX Office to again request that her abusive partner be barred from going to her new dorm. The Title IX Office advised her that they would request that her abusive partner stay out of her dorm building. Taja never heard back from the Title IX Office about this issue, whether they had spoken to her abusive partner, nor whether he agreed to stay out of her building.

102.    Because she never heard from the Title IX Office on the issue, and unsure about whether or not her abuser could still enter her building, Taja was scared and uncomfortable leaving her dorm room.

103.    As a result of being confined to her room due to Brown's unwillingness to provide guidance and accommodation, Taja was forced to rely on her new romantic partner for basic necessities and escorts to class.

104.    However, Taja's new relationship devolved into physical and emotional abuse. Due to Taja's dependence on the partnership for basic necessities, she felt trapped in the relationship and that she could not leave.

105.    In July 2020, Taja learned, through the new partner's ex-girlfriend, that he had raped four other women, two of whom were Brown students. Taja ended the relationship and went to the Title IX Office with four other women to report the abuse and the prior rapes.

106.    The Title IX Office instructed Taja and the four other women that, despite its knowledge of a history pertaining to this specific male student, there was no action that Brown could take against him because he had graduated in May 2020. Specifically, Rene Davis from the Title IX Office advised Taja that "Brown does not have a way of addressing conduct issues of individuals after they graduate." They were told that the best the Title IX Office could do was ask him to not attend the graduation ceremony for the class of 2020, which had been rescheduled due to COVID-19.

107.    The Title IX Office further advised Taja that they were unable to contact this former partner because his University email had been disabled. Taja provided a new contact email for him, but she never heard from the Title IX Office about whether he was successfully contacted or whether he had agreed to not attend the Class of 2020 graduation ceremony.

108.    At all times relevant to this Complaint, Taja's main contact at the Title IX Office was Brown's Title IX Officer, Rene Davis.

*__Chloe__*

109.    Chloe graduated from Brown in 2019 with a degree in Cognitive Neuroscience. In August 2018, Chloe was retaliated against for having publicly spoken out about an April 14, 2016 sexual assault, while incapacitated, at the hands of a male Brown student.

110.    Initially the male student, Chloe's assailant, was found responsible for sexual assault after Chloe filed a Title IX complaint. The male student appealed. While the appeal was pending, the male student was been selected to be the graduation speaker for Brown.

111.    Chloe contacted the Title IX Office requesting that the male student not be made the graduation speaker given the finding of sexual assault responsibility against him. The Title IX Office ignored Chloe's request.

112.    Chloe then contacted a college newspaper to highlight that Brown was ignoring a survivor's request that her assailant not be given the privilege of speaking at Brown's graduation.

113.    Thereafter, the Title IX Office permitted Chloe's assailant to file a retaliation claim against her for speaking her story.

114.    At the conclusion of the appeal, the assailant's responsibility finding was overturned, and Chloe was found responsible for retaliation for speaking her story.

## CLASS ACTION ALLEGATIONS

115.    Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

116.    The class that the Plaintiffs seek to represent (the "Class") is defined as follows (the following hereinafter sometimes referred to as the "Class definition"):

> All present and past women students who attended Brown University's Providence, Rhode Island campus from 2018 to present, who experienced sexual assault, harassment, or other forms of sexual misconduct and were harmed by Defendant's failure to

provide resources for students who experience discrimination on the basis of sex, including perceived sexual orientation, and/or gender presentation.

117.    Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveals that the Class should be expanded or otherwise modified. Plaintiffs also reserve the right to establish sub-classes as appropriate.

118.    This action is brought and properly maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3), and satisfies the requirements thereof. As used herein, the term "Class Members" shall mean and refer to the members of the Class.

119.    The Class consists of thousands of women, making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the identities of the individual members are ascertainable through records maintained by Brown.

120.    The claims of Plaintiffs are typical of the Class. The claims of the Plaintiffs and the Class are based on the same legal theories and arise from the same unlawful pattern and practice of mishandling claims for sexual harassment and assault.

121.    There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect only individual Class Members within the meaning of Fed. R. Civ. P. 23(a)(2) and (b)(3). Class treatment of common issues under Fed. R. Civ. P. 23(c)(4) will materially advance the litigation.

122.    The Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by Rule 23(a)(4) of the Federal Rules of Civil Procedure. The Plaintiffs are adequate representatives of the Class because they have no interests which are adverse to the interests of the other Class Members. The Plaintiffs are committed to the vigorous prosecution of

this action and, to that end, the Plaintiffs have retained counsel who are competent and experienced in handling complex litigation, including class action litigation, on behalf of similar plaintiffs.

123.    A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure because:

(a)    the expense and burden of individual litigation make it economically unfeasible for Class Members to seek redress of their claims other than through the procedure of a class action;

(b)    Class Members may be too humiliated or isolated to seek individual redress of their claims in a public forum for fear of public embarrassment and retaliation, and a class action procedure allows redress without participation in extended and traumatizing litigation;

(c)    Class Members may suffer from severe mental health issues related to the sexual misconduct they experienced while at Brown and do not have the physical ability to withstand a deposition or trial to seek redress of their claims;

(d)    Plaintiffs are unaware of any other actions seeking the same relief that is sought through the class action procedure;

(e)    concentrating the claims against Brown would grant it finality in litigation as well as guidance through injunctive orders; and

(f)    absent a class action, Brown would likely retain the ill-gotten windfall from its unlawful activities and would continue such unlawful activities to the detriment of future Brown students.

124.    Common questions of law and fact exist as to the Class Members, as required by Rule 23(a)(2) of the Federal Rules of Civil Procedure, and predominate over any questions which affect individual members of the Class, as required by Rule 23(b)(2) of the Federal Rules of Civil Procedure, including:

(a)    Whether Brown had a pattern and practice of failing to investigate and/or report allegations of sexual misconduct;

(b)    Whether Brown intentionally concealed complaints of sexual misconduct by students;

(c)    Whether such a pattern and practice constitutes a violation of Title IX as a form of sex/gender discrimination;

(d)    Whether the sex/gender-based discrimination suffered by Plaintiffs and other Class Members denied them equal access to educational opportunities or benefits;

(e)    Whether Plaintiffs and other Class Members are members of a protected class;

(f)    Whether Plaintiffs and other Class Members were subjected to a hostile educational environment on Brown's campus;

(g)    Whether Brown exercised substantial control over Plaintiffs' and other Class Members' abusers, who were students enrolled at Brown or employees working at Brown;

(h)    Whether Brown had actual knowledge of the pervasive culture of sexual misconduct that was occurring on its campus, which was created by and furthered by its repeated failure to enforce its own policies and federal law and guidance;

(i)    Whether Brown breached its duty to its students as a result of its indifference to the acts of sexual misconduct;

(j)     Whether Brown engaged in a pattern and practice of allowing known abusers to have unfettered access to Plaintiffs and the other Class Members;

(k)     Whether Brown cultivated a culture of silence by failing to report complaints of sexual misconduct, failing to initiate and/or conduct adequate investigations and grievance procedures as required by Title IX, and failing to ensure victimized students had equal access to educational opportunities and benefits or grievance procedures;

(l)     Whether Brown failed to provide appropriate interim measures and accommodations to Plaintiffs and Class Members;

(m)     Whether Brown failed to adequately train employees on how to prevent sexual misconduct and properly respond to reports of the same;

(n)     Whether Brown intentionally disenfranchised Plaintiffs and other Class Members from the campus Title IX process, by failing to conduct a prompt, equitable, thorough, reliable, and impartial grievance process, and giving the assailants minimal or absolutely no discipline, thus allowing them to avoid the consequences of their abuse;

(o)     Whether Brown's failure to abide by the requirements of Title IX and its own policies and procedures were substantially motivated by the fact that complying with Title IX and its policies and procedures would have negatively impacted the reputation of the school;

(p)     Whether Brown's sex/gender-based discrimination was a systematic policy;

(q)    Whether Brown's discrimination against Plaintiffs and other Class Members endangered the safety, privacy, security, and well-being of Plaintiffs and other Class Members;

(r)    Whether Brown concealed its unwritten policies and procedures from the Plaintiffs and other Class Members;

(s)    Whether Plaintiffs and other Class Members sustained damages, and if so, the appropriate measure of damages;

(t)    Whether Plaintiffs and other Class Members are entitled to a permanent injunction, and if so, the appropriate scope of the injunction;

(u)    Whether Plaintiffs and other Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit;

(v)    Whether Brown breached its contractual obligations to Plaintiffs and other Class Members pursuant to the Equal Opportunity Policy, Sexual and Gender-based Misconduct Policy, and other governing documents;

(w)    Whether Brown's conduct amounted to a violation of the Rhode Island Civil Rights Act (R.I.G.L. § 42-112-1 *et seq.*); and

(x)    Whether Brown breached its duty to exercise reasonable care by failing to provide a process to address allegations such as sexual assault, including rape, sexual harassment and dating violence for Plaintiffs and Class Members who are students had a reasonable expectation that such an avenue would exist.

125.   In the alternative, this action is certifiable under the provisions of Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure because:

(a)    the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Brown;

(b)    the prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other Class Members, not the parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole, necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

126.    Plaintiffs are unaware of any difficulty which will be encountered in the management of this litigation precluding its maintenance as a class action.

### COUNT I
**Violation of Title IX**
**Deliberate Indifference to Sex/Gender Discrimination**
**20 U.S.C. §§ 1681, *et seq*.**

127.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

128.    All Plaintiffs, individually and on behalf of Class Members, allege violations of Title IX against Brown due to the deliberate indifference to sex/gender-based discrimination. Brown receives federal funds and is thus covered by Title IX's prohibition on sex/gender-based discrimination.

129.    Brown created and/or subjected Plaintiffs to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (a) ("Title IX"), because:

(a)    As women students seeking equal access to educational programs and activities at Brown, Plaintiffs were members of a protected class covered by Title IX;

(b)    Plaintiffs were subjected to sex/gender-based discrimination in the form of sexual assaults, sexual harassment, relationship violence, and/or stalking;

(c)    Plaintiffs were subjected to harassment based on their sex; and

(d)    Plaintiffs were subjected to a hostile educational environment created by Brown's lack of policies and procedures and failure to properly investigate, prevent, and/or address the sexual and physical assaults and harassment perpetrated on Plaintiffs.

130.    At all relevant times, Brown exercised substantial control over Plaintiffs' abusers who, at all relevant times, were (or remain currently) students enrolled at Brown or employees working at Brown.

131.    Brown had actual knowledge of the sex/gender-based discrimination, which was created by and furthered by its repeated failure to protect Plaintiffs consistent with Brown's own policies and federal law and guidance.

132.    Brown acted with deliberate indifference to the acts of sex/gender-based discrimination by failing to take any action to prevent them, deter the students and/or employees responsible, and/or protect Plaintiffs from sexual misconduct.

133.    Brown also acted with deliberate indifference to acts of sexual misconduct by failing to take immediate, effective remedial steps to resolve the Plaintiffs' allegations of sex/gender-based discrimination.

134.    Brown's repeated failure to promptly and appropriately respond to the sexual misconduct Plaintiffs experienced resulted in Plaintiffs, on the basis of their sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in Brown's educational programs and activities in violation of Title IX.

135.    Brown acted intentionally and with deliberate indifference to the repeated denial of Plaintiffs' access to educational opportunities or benefits. Brown's violation of its duty to Plaintiffs arises from its systemic failure to properly enforce Title IX. Contrary to its own policies, Brown cultivated a culture of silence by failing to report complaints of sex/gender-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure victimized students had equal access to educational opportunities and benefits or grievance procedures.

136.    The ongoing sexual and physical assaults, harassment, abuse, and stalking the Plaintiffs experienced, and the subsequent Title IX failures by Brown, were so severe, pervasive, and objectively offensive that Plaintiffs were denied equal access to Brown's educational opportunities and benefits, as they lost their academic focus, changed their majors, stopped attending classes, saw their grades slip, quit campus jobs, lost scholarships, and/or left Brown before completing their degrees.

137.    As a direct, natural, and proximate result of Brown's violation of Title IX due to its deliberate indifference to sex/gender-based discrimination, Plaintiffs have suffered actual damages including, but not limited to, medical expenses associated with mental and physical health treatment,

inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, loss of educational benefit including scholarship opportunities, loss of income, loss of enjoyment of life, economic damages associated with moving to flee their abusers, and other economic or non-economic damages, for which they are entitled to just compensation.

138.    Plaintiffs are also entitled to a permanent injunction requiring Brown to take substantial steps to remedy its deliberate indifference to reports of Title IX violations and change the culture of silence at Brown by providing appropriate training for its employees and students; conducting fair, equitable, unbiased, and thorough investigations into reports of sex/gender-based discrimination; holding students and employees accountable for their acts of sexual misconduct and discrimination; and remedying any hostile environment that is created as a result of sex/gender-based discrimination, as damages alone are not an adequate remedy for ongoing violations of Title IX.

## COUNT II
### Violation of Title IX
### Hostile Environment
### 20 U.S.C. §§ 1681, *et seq.*

139.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

140.    All Plaintiffs, individually and on behalf of Class Members, allege violations of Title IX against Brown due to the heightened risk of sex/gender-based discrimination on Brown's campus. Brown receives federal funds and is thus covered by Title IX's prohibition on sex/gender-based discrimination.

141.    As women students seeking equal access to educational opportunities and benefits at Brown, Plaintiffs were members of a protected class covered by Title IX.

142.    The abuse described previously in this Complaint, perpetuated by Brown employees and students, created an abusive and sexually hostile educational environment on Brown's campus that impeded and effectively denied Plaintiffs' equal access to educational opportunities and benefits.

143.    The ongoing sexual and physical assaults, harassment, abuse, and stalking the Plaintiffs experienced, and the subsequent Title IX failures, were so severe, pervasive, and objectively offensive that Plaintiffs were denied equal access to Brown's educational opportunities and benefits, as they lost their academic focus, changed their majors, stopped attending classes, saw their grades slip, quit campus jobs, lost scholarships, and/or left Brown before completing their degrees.

144.    Brown is liable for the abusive and hostile educational environment on campus because it had actual knowledge of Plaintiffs' abusers' acts of sex/gender-based discrimination against women students, but allowed them to continue to have unfettered access to women students, including Plaintiffs.

145.    Brown is also liable for its failure to remedy the hostile educational environment experienced by Plaintiffs by failing to offer Plaintiffs appropriate interim measures and accommodations that could have provided Plaintiffs with equal access to educational opportunities and benefits.

146.    Brown is also liable for its failure to remedy the hostile educational environment by failing to initiate and conduct proper investigations into the Title IX violations Plaintiffs suffered, appropriately sanction the assailants, and provide appropriate follow-up support to Plaintiffs, thus ensuring they received equal access to educational opportunities and benefits.

147.    As a direct, natural, and proximate result of Brown's violation of Title IX by creating and perpetuating a sexually hostile environment, Plaintiffs have suffered actual damages including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, loss of educational benefits including scholarships, loss of income, expenses associated with fleeing their abusers, and other economic and non-economic damages, for which they are entitled to just compensation.

148.    Plaintiffs are also entitled to a permanent injunction requiring Brown to take substantial steps to remedy its sexually hostile environment by providing appropriate training for its employees and students; conducting fair, equitable, unbiased, and thorough investigations into reports of sex/gender discrimination; holding students and employees accountable for their acts of sexual misconduct and discrimination; and remedying any hostile environment that is created as a result of sex/gender-based discrimination, as damages alone are not an adequate remedy for ongoing violations of Title IX.

**COUNT III**
**Violation of Title IX**
**Heightened Risk**
**20 U.S.C. §§ 1681,** *et seq.*

149.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

150.    All Plaintiffs, individually and on behalf of Class Members, allege violations of Title IX against Brown due to the heightened risk of sex/gender-based discrimination on Brown's campus. Brown receives federal funds and is thus covered by Title IX's prohibition on sex/gender-based discrimination.

151.    Despite sexual misconduct occurring frequently on campus, Brown failed to adequately train its employees on how to prevent and respond to reports of sex/gender-based discrimination and harassment.

152.    Contrary to Title IX and its own official policies, Brown cultivated a culture of silence by failing to report complaints of sex/gender-based discrimination, initiate and/or conduct adequate investigations and grievance procedures under Title IX, and ensure that victimized students had equal access to educational opportunities and benefits or grievance procedures.

153.    The ongoing sexual and physical assaults, harassment, abuse, and stalking the Plaintiffs experienced, and the subsequent Title IX failures by Brown, were so severe, pervasive, and objectively offensive that Plaintiffs were denied equal access to Brown's educational opportunities and benefits, as they lost their academic focus, changed their majors, stopped attending classes, saw their grades slip, quit campus jobs, lost scholarships, and/or left Brown before completing their degrees.

154.    As a direct, natural, and proximate result of Brown's violation of Title IX and creation and perpetuation of an environment with heightened risk, Plaintiffs have suffered actual damages including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, loss of educational benefits including scholarships, loss of income, costs associated with fleeing abusers, and other economic or non-economic damages, for which they are entitled to just compensation.

155.    Plaintiffs are also entitled to a permanent injunction requiring Brown to take substantial steps to lower the risk of sex/gender-based discrimination by providing appropriate training for its employees and students; conducting fair, equitable, unbiased, and thorough

investigations into reports of sex/gender-based discrimination; holding students and employees accountable for their acts of sexual misconduct and discrimination; and remedying any hostile environment that is created as a result of sex/gender discrimination, as damages alone are not an adequate remedy for ongoing violations of Title IX.

## COUNT IV
### Violation of Title IX
### Erroneous Outcome
### 20 U.S.C. §§ 1681, *et seq.*

156.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

157.    All Plaintiffs, individually and on behalf of Class Members, allege violations of Title IX against Brown due to the erroneous outcomes of investigations of sex/gender-based discrimination. Brown receives federal funds and is thus covered by Title IX's prohibition on sex/gender-based discrimination.

158.    After disenfranchising Plaintiffs from the campus Title IX process, Brown failed to conduct a prompt, equitable, thorough, reliable, and impartial grievance process, as required under Title IX. Instead, Brown gave Plaintiffs' assailants minimal discipline, or in some cases no discipline whatsoever, thus allowing them to avoid the consequences of their abuse against Plaintiffs.

159.    The ongoing sexual and physical assaults, harassment, abuse, and stalking the Plaintiffs experienced, and the subsequent Title IX failures by Brown, were so severe, pervasive, and objectively offensive that Plaintiffs were denied equal access to Brown's educational opportunities and benefits, as they lost their academic focus, changed their majors, stopped attending classes, saw their grades slip, quit campus jobs, lost scholarships, and/or left Brown before completing their degrees.

160.    As a direct and proximate result of Brown's violation of Title IX and erroneous outcomes in Title IX proceedings retaliation, Plaintiffs have sustained injuries and damages, including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, loss of educational benefits including scholarships, loss of income and other economic or non-economic damages, for which they are entitled to just compensation.

161.    Plaintiffs are also entitled to a permanent injunction requiring Brown to ensure individuals who report sex/gender-based discrimination are provided with due process, take substantial steps to properly investigate reports of sex/gender-based discrimination at Brown, provide appropriate interim measures and reasonable accommodations to complainants, impose appropriate discipline and remedial measures in situations where a violation of the Title IX Policy is found to have occurred, as damages alone are not an adequate remedy for the ongoing violations of Title IX.

## COUNT V
### Violation of Title IX
### Retaliation by Withholding Protection Otherwise Conferred by Title IX
### 20 U.S.C. §§ 1681, *et seq.*

162.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

163.    All Plaintiffs, individually and on behalf of Class Members, allege violations of Title IX against Brown due to retaliation. Brown receives federal funds and is thus covered by Title IX's prohibition on sex/gender-based discrimination.

164.    Title IX and its interpretive regulations prohibit retaliation against any person who complains about what they reasonably believe to be a Title IX violation, advocates on behalf of Title IX rights and enforcement, or cooperates in any investigation of a Title IX violation.

165.    Plaintiffs engaged in protected activity by reporting incidents of sex/gender-based discrimination perpetrated on them by Brown students to Brown staff. Plaintiffs' actions were protected by the anti-retaliation provision of Title IX.

166.    Brown engaged in materially adverse actions against Plaintiffs where staff failed to report Plaintiffs' disclosures of sexual misconduct, where Brown's Title IX Office failed to properly investigate Plaintiffs' claims of sex/gender discrimination, where Brown's Title IX Office failed to initiate appropriate interim measures to ensure their safety and ongoing equal access to educational opportunities and benefits, and where Brown's Title IX Office failed to implement appropriate sanctions and responsive measures to remedy the sexually hostile environment and prevent its recurrence.

167.    There was a causal connection between Plaintiffs' decisions to exercise their rights under Title IX by reporting sex/gender-based discrimination and Brown's decisions to engage in adverse actions against them.

168.    As a direct and proximate result of Brown's Title IX retaliation, Plaintiffs have sustained injuries and damages, including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, loss of educational benefits including scholarships, loss of income and other economic or non-economic damages, for which they are entitled to just compensation.

169.    Plaintiffs are also entitled to a permanent injunction requiring Brown to ensure individuals who report sex/gender-based discrimination are provided with due process, take substantial steps to properly investigate reports of sex/gender-based discrimination at Brown, provide appropriate interim measures and reasonable accommodations to complainants, impose appropriate discipline and remedial measures in situations where a violation of the Title IX Policy is found to have occurred, cease all retaliatory action against students who report sex/gender-based discrimination, and impose appropriate discipline and remedial measures where retaliation is found to have occurred, as damages alone are not an adequate remedy for the ongoing retaliation in violation of Title IX.

## COUNT VI
### Negligence

170.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

171.    Plaintiffs, individually and on behalf of Class Members, allege negligence by Brown in its response to reports of sexual misconduct suffered by Plaintiffs.

172.    At all relevant times, Brown owed Plaintiffs a duty of reasonable care to ensure their safety and freedom from sex/gender-based assault, harassment, and abuse by, among other things, conducting an investigation into their claims of sex/gender-based assault, sexual misconduct, and abuse and enforcing the Title IX Policy.

173.    Brown was aware that Plaintiffs had been subject to sexual misconduct and took no reasonable protective measures to protect Plaintiffs nor took action to prevent its recurrence or remedy its effects.

174.    Brown's failure to follow its own policies in reviewing, investigating, and resolving complaints of sexual assault and harassment constitutes a breach of its duty of care to Plaintiffs.

175.    As a direct and proximate result of Brown's negligence, Plaintiffs have sustained injuries and damages, including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, loss of educational benefits including scholarships, loss of income and other economic or non-economic damages, for which they are entitled to just compensation.

176.    Plaintiffs are entitled to monetary compensation for past damages and injunctive relief from Brown, as damages alone are not an adequate remedy for the Brown's ongoing negligence. Brown is also vicariously liable for the damages caused by its employees.

## COUNT VII
### Negligent Supervision

177.    Plaintiffs adopt and incorporate by reference previously plead paragraphs as if fully plead herein.

178.    Plaintiffs, individually and on behalf of Class Members, allege negligent supervision by Brown in its response to reports of sexual misconduct. Brown had a duty to properly supervise, train, and monitor its employees and students and to ensure those employees' and students' compliance with all applicable statutes, laws, regulations, and institutional policies, but they failed to do so and therefore breached the duties of care owed to Plaintiffs as alleged herein.

179.    Brown's failure to timely report and investigate the physical violence and sexual misconduct perpetrated against Plaintiffs, or to monitor the Title IX investigation and response process at Brown, is a breach of its duty to supervise.

180.    As a direct and proximate cause of Brown's conduct, actions, and/or inactions Plaintiffs have sustained injuries and damages, including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress,

embarrassment, humiliation, physical assault, anxiety, emotional pain and suffering, a denial of access to educational benefit, loss of educational benefit including scholarship opportunities, loss of income and other economic and non-economic damages, and other such injuries and physical manifestations as may appear during the course of discovery and trial in this matter, for which they are entitled to just compensation.

181.    Plaintiffs are entitled to monetary compensation for past damages and injunctive relief from Brown, as damages alone are not an adequate remedy for the Brown's ongoing negligence. Brown is also vicariously liable for the damages caused by its employees.

## COUNT VIII
### Bad Faith Breach of Contract

182.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

183.    Plaintiffs, individually and on behalf of Class Members, allege bad faith breach of contract against Brown.

184.    Brown's Sexual and Gender-based Misconduct Policy, Title IX Policy, Equal Opportunity Policy, and other governing documents outline clear contractual obligations to all students at Brown, including Plaintiffs.

185.    Brown promulgated rules, regulations, and policies with which it requires all students and employees to comply, which constitute a binding agreement.

186.    The causes and objects of these obligations include obtaining an education, and the privileges of attending Brown, Plaintiffs paying tuition, fees, and costs, as well as state taxes. Brown accepted Plaintiffs' consideration and obtained the benefit of the Defendant's bargain, and Plaintiffs performed.

187.    Brown breached its contractual obligations to Plaintiffs by failing to provide Plaintiffs with an education free from sex/gender-based discrimination and acts of sexual misconduct as provided for in the Sexual and Gender-based Misconduct Policy, Title IX Policy, and Equal Opportunity Policy. Brown's failure to provide Plaintiffs with their contractually owed benefit of an education free of sexual misconduct is a material failure to perform that included nonperformance, defective performance, and delay in performance. Brown's material failure to perform (breach) resulted in economic and emotional damages to the Plaintiffs.

188.    Brown's failure to perform was in bad faith as alleged herein, and thus Plaintiffs are entitled to all damages regardless of foreseeability. These damages include damages for nonpecuniary loss, as the nature of these specific obligations is intended to gratify a nonpecuniary interest. Because of the circumstances surrounding the formation and the nonperformance of the obligations, Brown knew, or should have known, that its failure to perform would cause substantial nonpecuniary loss to Plaintiffs. Additionally, Brown intended to cause nonpecuniary damages, as alleged herein; thus, these damages may be recovered pursuant to Rhode Island General Laws 10-7-1.1.

189.    Any clauses in these policies that would purport to limit Brown's liability are null as a result of its gross fault and Plaintiffs' physical injuries.

190.    As a direct and proximate result of Brown's failure to perform, Plaintiffs have sustained injuries and damages, including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional pain and suffering, a denial of access to educational opportunities and benefits, and other economic or non-economic damages.

191.    Plaintiffs are entitled to monetary compensation for pecuniary and nonpecuniary damages and injunctive relief requiring specific performance from Brown.

## COUNT IX
### Intentional Infliction of Emotional Distress

192.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

193.    Plaintiffs, individually and on behalf of Class Members, allege intentional infliction of emotional distress by Brown in its response to reports of sexual misconduct.

194.    By dismissing Plaintiffs' allegations of sexual misconduct, failing to properly investigate such claims or protect Plaintiffs from their assailants, justifying the behavior of the assailants, failing to properly discipline the assailants, openly mocking and spreading rumors about Plaintiffs, isolating and alienating Plaintiffs, and improperly disciplining and retaliating against Plaintiffs, Brown engaged in extreme and outrageous conduct and specifically intended for its conduct to cause Plaintiffs to suffer emotional distress so severe that it would silence any additional disclosures.

195.    As a result of Brown's extreme and outrageous conduct, Plaintiffs suffered severe emotional distress, including, but not limited to, headaches, nausea, dizziness, shortness of breath, racing heart rate, insomnia, depression, anxiety, post-traumatic stress disorder, obsessive compulsive disorder, eating disorders, substance dependency, and other such injuries and physical manifestations as may appear during the course of discovery and trial in this matter. Defendants are aware of such emotional distress suffered by Plaintiffs.

196.    Plaintiffs are entitled to monetary compensation for past damages and injunctive relief from Brown, as damages alone are not an adequate remedy for the Brown's conduct. Brown is also vicariously liable for the damages caused by its employees.

## COUNT X
### Negligent Failure to Warn, Train or Educate

197.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

198.    Plaintiffs, individually and on behalf of Class Members, allege negligent failure to warn, train or educate by Brown in its response to reports of sexual misconduct.

199.    Brown owed Plaintiffs and the Class Members a duty to take reasonable protective measures to protect them from the risks of sex/gender-based discrimination, sexual assault, including rape, sexual harassment, and dating violence by properly warning, training or educating Plaintiffs and the Class Members on how to avoid such risks on its campus or as Brown students.

200.    Brown breached its duty to take reasonable protective measures to protect Plaintiffs and the Class Members from the risks of sex/gender-based discrimination, sexual assault, including rape, sexual harassment and dating violence by failing to properly warn, train or educate Plaintiffs and the Class Members on how to avoid such risks on its campus, with other students or with Brown employees.

201.    Brown breached its duty to take reasonable protective measures to protect Plaintiffs and the Class Members from the risks of sex/gender-based discrimination, sexual assault, including rape, sexual harassment and dating violence by failing to properly supervise, train, and monitor its employees and students and to ensure those employees' and students' compliance with all applicable statutes, laws, regulations, and institutional policies.

202.    As a direct and proximate cause of Brown's conduct, actions, and/or inactions Plaintiffs have sustained injuries and damages, including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, embarrassment, humiliation, physical assault, anxiety, emotional pain and suffering, a denial of

access to educational benefit, loss of educational benefit including scholarship opportunities, loss of income and other economic and non-economic damages, and other such injuries and physical manifestations as may appear during the course of discovery and trial in this matter, for which they are entitled to just compensation.

203.    Plaintiffs are entitled to monetary compensation for past damages and injunctive relief from Brown, as damages alone are not an adequate remedy for the Brown's ongoing negligence. Brown is also vicariously liable for the damages caused by its employees.

## COUNT XI
### Violation of Rhode Island Civil Rights Act (R.I.G.L.)
### R.I. Gen. Laws. § 42-112-1, *et seq.*

204.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

205.    Plaintiffs, individually and on behalf of Class Members, allege violation of the Rhode Island Civil Rights Act, § 42-112-1, *et seq.*

206.    Brown, by and through its agents, servants, employees and/or those for whose conduct it was responsible, interfered with the personal, contractual, and property rights of Plaintiffs and the Class Members and with their right to the full and equal benefit of all laws and proceedings for the security of persons.

207.    Brown's deliberate failure to enforce compliance with the requirements set forth under the R.I.G.L. violated the rights of Plaintiffs and the Class Members to equal protection of the law, created a hostile education environment, and substantially interfered with access to educational opportunities or benefits.

208.    Brown's discriminatory actions or inactions were motivated by the sex/gender of Plaintiffs and the Class Members, and amounted to reckless or callous indifference to the protected rights of Plaintiffs and the Class Members.

209.    As a direct, natural, and proximate result of Brown's violation of the R.I.G.L., Plaintiffs have suffered actual damages including, but not limited to, medical expenses associated with mental and physical health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, a denial of access to educational benefit, loss of educational benefit including scholarship opportunities, loss of income, loss of enjoyment of life, economic damages associated with moving to flee their abusers, and other economic or non-economic damages, for which they are entitled to just compensation.

## DAMAGES

210.    Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

211.    As a direct and proximate result of the above-described conduct, Plaintiffs and Class Member suffered general, special, incidental, and consequential injury and damages, past, present, and future, in an amount that shall be fully proven at the time of trial. These past, present, and future damages include but are not limited to the following:

(a)    Pain, suffering, and emotional distress;

(b)    Physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life;

(c)    Medical expenses;

(d)    Pharmaceutical expenses;

(e)    Loss of education in educational opportunities;

(f)     Additional unnecessary educational expenses;

(g)     Loss of employment and earning capacity;

(h)     Travel and travel-related expenses;

(i)     Prevention from performing daily activities and obtaining the full enjoyment of life;

(j)     Expenses from psychological treatment, therapy, and counseling;

(k)     Fractured family and personal relationships;

(l)     A loss of consortium society and companionship; and

(m)     All other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

**PRAYER FOR RELIEF**

212.    For all the foregoing reasons, Plaintiffs, on behalf of themselves and the putative Class, pray for judgment against Brown as follows:

(n)     Certification of this action as a class action, pursuant to Fed. R. Civ. P. 23, appointment of Plaintiffs as representatives of the Class, and appointment of Plaintiffs' counsel as Class Counsel;

(o)     For past, present, and future economic and non-economic damages in an amount to be determined at trial;

(p)     For past, present, and future general, special, incidental, and consequential damages in an amount to be determined at trial;

(q)     For any appropriate statutory damages;

(r)     For costs of this suit;

(s)     For punitive damages;

(t)     For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;

(u)     For reasonable attorneys' fees, costs, and interest, to the fullest extent allowed by law;

(v)     A permanent injunction requiring compliance with Title IX and recurring external audits of Brown's Title IX compliance; and

(w)     All such additional and/or further relief as this Court deems just and equitable under the circumstances.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury in this action of all issues so triable.

Respectfully,

Dated: August 6, 2021

*/s/ Patricia E. Andrews*

Patricia E. Andrews
**LAW OFFICES OF PATRICIA E. ANDREWS**
38 N. Court Street
Providence, RI 02903
(401) 421-0966
peandrews@verizon.net

**SALTZ MONGELUZZI AND BENDESKY**
Elizabeth A. Bailey
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: 215-575-3859
ebailey@smbb.com

**GRANT & EISENHOFER P.A.**
Kimberly A. Evans
Samuel Mukiibi
Carla Agbiro
123 Justison Street
Wilmington, DE 19801
(302) 622-7000
kevans@gelaw.com
smukiibi@gelaw.com
cagbiro@gelaw.com

**GRANT & EISENHOFER P.A.**
M. Elizabeth Graham
101 California Street, Suite 2710
San Francisco, CA 94111
(415) 365-9585
egraham@gelaw.com

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS**